*1359
 
 OPINION
 

 Per Curiam:
 

 Real parties in interest Robert Bigelow and other owners of rental properties in Las Vegas (“Bigelow”) undertook a pattern of keeping tenants who were late in paying rent out of their apartments by placing a pin in the lock, rendering the keys to the apartments inoperable and forcing tenants to contact Bigelow in order to gain access. Petitioners Lori Meyer and other named plaintiffs who were Bigelow’s tenants (“the Tenants”) sued Bigelow for wrongful eviction and a number of other statutory and common law violations. The district court refused to certify a class because it felt the proposed class lacked commonality. The Tenants now seek a writ of mandamus from this court, claiming that the district court refusal was arbitrary and capricious. For the reasons discussed herein, we conclude that the element of commonality was satisfied and that the failure of the district court to find commonality constituted an abuse of discretion. We therefore grant a writ of mandamus compelling the district court to certify a plaintiff class.
 

 FACTS
 

 Lori Meyer (“Meyer”) was one of Bigelow’s tenants. Bigelow owned over 2,000 rentals, including Blue Harbor Club Apartments and South Cove Apartments, renting almost exclusively on a weekly basis. Meyer alleged that she informed Bigelow that she would be late in paying rent because her husband was sick and would soon enter the hospital. Bigelow told her that it would “work with her.” Meyer went to work and left her son at her apartment with a babysitter. After returning from the apartment pool, Meyer’s son and babysitter found a pin in the lock. Bigelow informed them that they were locked out and could not be readmitted until Meyer paid rent. Meyer alleged that she received no prior notice of the pinning. When Meyer complained, she alleged that she was threatened to keep quiet. Meyer and other tenants who had been locked out initiated a lawsuit against Bigelow for illegal lockout, statutory violations, unlawful entry, conversion, and other causes of action. The Tenants also sought class action status, naming as plaintiffs
 

 [a]ll tenants who live, will live or have lived at those apartment complexes known as South Cove Apartments or Blue Harbor Club Apartments since September 1, 1990, and who have been or will be evicted or excluded from their rented apartments prior to being served an eviction notice as required by law.
 

 
 *1360
 
 An affidavit submitted by Daryl Wyatt (“Wyatt”), a former district manager for Bigelow, described Bigelow’s policy of placing a pin in the locking mechanism of a tenant’s door, preventing the tenant from gaining access to their apartment or personal belongings. Wyatt stated that the practice was followed at all Bigelow rental complexes. According to Wyatt, Bigelow had determined that out of every fifty tenants who were pinned out, less than two would ever call police officers or seek legal help, making the practice an economically expedient alternative to lawful eviction. Wyatt estimated that during a four-month period, 300 to 400 tenants were pinned out in Harbor Island Apartments alone, about five or six each day.
 

 An affidavit submitted by Cheryl Moody (“Moody”), a former security dispatcher for all Bigelow apartments, stated that she received around three complaints every night from tenants who were pinned out of their apartments. After-hours security officers were instructed to allow tenants access to their apartment if the tenant threatened to call police. Otherwise, officers were to encourage tenants to leave the premises and contact management the next day. Moody estimated that within a three-month period, 180 tenants called at night because they had been pinned out of their apartments. Deposition testimony of other Bigelow employees confirmed these allegations. The Tenants estimate that over a period of several years thousands of tenants must have been pinned out of Bigelow apartments.
 

 Richard Clouse (“Clouse”), present Vice President of Bigelow Management, Inc., admitted that the Bigelow policy was to give notice on the first day rent was overdue, pin the door on the second day and then pack belongings out of the apartment on the third day. Clouse admitted to being told that the practice was illegal. Depositions of other employees alleged that Clouse believed the practice to be unlawful. Clouse denied that tenants were actually prevented from reentering their apartments — even if they had not paid their rent — once they contacted management and requested that Bigelow remove the pin.
 

 Bigelow moved to dismiss the Tenants’ complaint. Bigelow justified the practice of pinning by pointing out that the apartments were high-quality weekly rentals and did not require a security deposit or payment in advance. Because Bigelow apartments experienced over 10,000 move-outs during 1993 Bigelow argued that it had no other way of determining whether a tenant had moved out or was simply avoiding management and refusing to pay rent.
 

 Bigelow also asserted that class status should be denied because the Tenants and other potential plaintiffs had nothing in
 
 *1361
 
 common. According to Bigelow, the plaintiffs were pinned in different apartment complexes run by different employees on different dates and for different reasons. Bigelow also noted that it initiated lawful summary evictions when necessary and did not resort to pinning as a means of eviction.
 

 The court denied both the motion to dismiss and the counter-motion to certify a class. The Tenants moved the court to reconsider the order denying class certification. The minute order summarizes argument on the motion for reconsideration:'
 

 Argument by Ms. Buckley [the Tenants’ attorney]. Court stated he had found there was different evidence as to each party and that the parties had nothing in common. COURT ORDERED, Motion DENIED. Ms. Buckley asked for a clarification to which the Court stated he felt the commonalty [sic] element was missing and that it is not a class action case. Mr. Parnell [Bigelow’s attorney] to prepare the Order.
 

 Bigelow and the Tenants disagreed over what should be included in this order. After trading drafts with Bigelow, the Tenants’ counsel clarified the court’s reasoning with the court’s law clerk. The clerk indicated that if the court gave only one reason for denial of class certification in open court, then that reason alone was the basis for denial. The Tenants claimed that Bigelow agreed to allow the Tenants’ counsel to contact the clerk to seek clarification. Bigelow claimed that the Tenants never informed it that the ex parte communication would occur. The Tenants then sent the court a letter explaining the dispute between the Tenants and Bigelow concerning the language of the order and sent a copy to Bigelow. The court eventually signed the Tenants’ narrower version of the order denying the Tenants’ motion because they “failed to show that common issues of fact or law exist as required by NRCP 23(a)(2).”
 

 Bigelow moved for a
 
 nunc pro tunc
 
 order to clarify the court’s rationale for denying class certification, arguing that the court found many more deficiencies in the Tenants’ claim for class status than the order indicated. The court denied the motion. The Tenants then appealed the court’s determination that the class lacked commonality.
 

 DISCUSSION
 

 Whether a sufficient basis exists to issue a writ of mandamus
 

 This court may issue a writ of mandamus to control a district court’s arbitrary or capricious exercise of discretion. Marshall v. District Court, 108 Nev. 459, 466, 836 P.2d 47, 52 (1992). The
 
 *1362
 
 district court in the case at hand refused to certify a class because the class lacked the element of commonality. The Tenants and the Nevada Trial Lawyers Association (“the NTLA”), who filed an amicus brief supporting the Tenants’ position, argue that if this court determines that the element of commonality exists, then the district court’s refusal to certify a class constitutes arbitrary and capricious action justifying a writ of mandamus.
 

 The Tenants argue that this case is especially appropriate for a writ of mandamus because of the presence of substantial public policy concerns, predominantly legal issues and inevitable problems concerning discovery, notice, and large numbers of interve-nors if class status is denied. Citing Johnson v. Travelers Insurance Company, 89 Nev. 467, 515 P.2d 68 (1973), the Tenants argue that dismissal of a class action is tantamount to dismissal of all members of the alleged class other than the named plaintiffs, in essence constituting a final judgment that can be appealed. The Tenants argue that the same concerns justifying the appeal in
 
 Johnson
 
 also justify their petition for a writ of mandamus.
 

 Bigelow responds that the Tenants unlawfully narrowed their issues on appeal because the district court order to dismiss the Tenants’ countermotion for class certification did not single out a lack of commonality as the only justification for dismissal.
 
 [1]
 
 Bigelow asserts that the practical effect of denying reconsideration of the issue was to leave intact the original order as entered. Because the original order made no mention of the rationale justifying dismissal, Bigelow concludes that the Tenants must prove to this court that they satisfy all requirements of a class action.
 

 We conclude that this argument lacks merit. The Tenants do not argue that the original order denying their countermotion for class certification is not intact as entered. The
 
 effect
 
 of this original order remains unchanged. The
 
 rationale
 
 justifying the order remains subject to this court’s inquiry. This inquiry may extend to the boundaries of the entire record, not just to selected portions.
 
 See
 
 State ex rel. Pitz v. City of Columbus, 564 N.E.2d
 
 *1363
 
 1081, 1085 (Ohio App. 1988) (culling facts from the record to justify the trial court’s actions). The district court stated its rationale for denying class status in the court’s order denying reconsideration of the issue of certification. The district court refused to amend that order. This court should not be compelled to ignore these facts in determining whether the district court’s rationale for denying class certification was arbitrary and capricious.
 

 Bigelow also responds that the language of the minute order describing the court’s rationale for denying reconsideration does not single out a lack of commonality as the only justification for dismissal. Bigelow concludes that this indicates the intent of the district court to refuse to narrow its refusal to certify a class to a lack of commonality. Bigelow quotes the following language to support this conclusion: “[The court] felt the commonality element was missing
 
 and that it was not a class action.”
 
 (Emphasis supplied by Bigelow.)
 

 We conclude that this argument is without merit. Although conceivably this summary language could be interpreted to indicate that the Tenants’ action was not a class action
 
 and
 
 lacked commonality, the full text of the minute order suggests an opposite interpretation, namely, that the court felt the Tenants’ action was not a class action precisely
 
 because
 
 it lacked commonality. Furthermore, the court’s order denying reconsideration cited commonality as the only obstacle to class status. The court refused to amend that order.
 

 We conclude, therefore, that the Tenants’ concerns justify examining the district court’s action to determine if it abused its discretion in refusing to certify a class.
 

 Whether the district court’s denial of class status was clearly erroneous
 

 NRCP 23, identical to its federal counterpart, governs the process of class certification. This rule provides that a class representative can sue on behalf of the class if (1) the class is so numerous that joinder is impractical, (2) questions of law or fact are common to class members, (3) claims and defenses of the representative are typical of those of the class, and (4) the representative will fairly and adequately protect the interests of the class.
 
 See
 
 NRCP 23(a). The court must also be satisfied that the elements of NRCP 23(b) are met. NRCP 23(b) generally deals with whether maintaining a class action is logistically possible and superior to other actions. In analyzing whether it should certify a class, the court should generally accept the
 
 *1364
 
 allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975),
 
 cert. denied,
 
 429 U.S. 816 (1976). An extensive evidentiary showing is not required.
 
 Id.
 
 In the Tenants’ case, this court must determine whether questions of law or fact are common to class members. If such questions do exist, then the district court acted arbitrarily and capriciously in failing to certify the class, justifying this court’s use of mandamus to compel certification.
 

 The Tenants and the NTLA argue that common questions both of law and fact are evident in this case. With respect to questions of fact, the NTLA argues that when a general corporate policy is the focus of litigation, class status for those adversely affected by the policy is appropriate. The NTLA cites Bowling v. Pfizer, Inc., 143 F.R.D. 141 (S.D. Ohio 1992), where Pfizer produced thousands of defective heart valves.
 
 Id.
 
 at 147. Although plaintiffs alleged different injuries and sought many different forms of relief, the court concluded that Pfizer’s conduct with regard to all implantees arose out of a single nucleus of operative facts and law, establishing the element of commonality.
 
 Id.
 
 at 158. The NTLA argues that Bigelow’s practice of pinning tenants out of their apartments is a similar corporate practice satisfying the element of commonality. The Tenants make essentially the same argument, albeit with different authority, concluding that commonality is met in circumstances calling into question a general corporate policy. The Tenants also note that a difference in the amount of damages does not defeat commonality.
 
 See Johnson,
 
 89 Nev. at 473, 515 P.2d at 73.
 

 With respect to questions of law, the NTLA first points out that class members must hold in common questions of fact
 
 or
 
 law. The existence of questions of law in common is therefore sufficient alone to establish commonality. Both the Tenants and the NTLA argue that questions of whether pinning violated landlord-tenant law, constituted trespass, civil conspiracy, etc., are held in common by all potential class members. The NTLA cites Like v. Carter, 448 F.2d 798 (8th Cir. 1971),
 
 cert. denied,
 
 408 U.S. 1045 (1972), to justify this argument. There, the trial court held class certification would be inappropriate because facts pertaining to the delay in processing social security applications varied from case to case.
 
 Id.
 
 at 802. The appellate court reversed, concluding that factual differences are not fatal if common questions of law exist, such as the interpretation and validity of the statutes and regulations in question.
 
 Id.
 

 Bigelow responds that the issue of commonality is controlled by
 
 Johnson,
 
 89 Nev. at 467, 515 P.2d at 68. Bigelow notes that in
 
 Johnson
 
 this court affirmed the district court’s refusal to certify a
 
 *1365
 
 class action involving allegations of fraud and misrepresentation because of the inherent uniqueness of each litigant’s claim and understanding of the contract at issue. Bigelow asserts that the case at hand is analogous. Citing
 
 Blackie,
 
 Bigelow observes that a class action cannot be maintained when differences among class members are more than slight. Bigelow argues that because differences among Bigelow tenants are more than slight, the factual circumstances surrounding Bigelow’s pinning of each tenant would have to be fully explored.
 

 We conclude that the Tenants and the NTLA are correct. The very case Bigelow asserts is controlling does nothing to further its arguments in response. Bigelow itself admits that
 
 Johnson
 
 dealt only with the “inherent uniqueness” of causes of action for fraud and misrepresentation. The outcome of
 
 Johnson
 
 rested entirely upon the court’s conclusion that the complaint lacked a “common thread” of fraud which existed and pervaded the transaction at the time of the consumer’s purchase.
 
 Id.
 
 at 472-73, 515 P.2d at 72. In fact, this court concluded that no claim in the complaint could possibly have sustained a cause of action for fraud.
 
 Johnson,
 
 89 Nev. at 473, 515 P.2d at 73. Applying
 
 Johnson,
 
 the biggest problem with Bigelow’s rationale for pinning (that is, distinguishing who has moved from who is simply avoiding management) is that pinning itself may be unlawful and is alleged to be so by both the Tenants and the NTLA.
 

 CONCLUSION
 

 We conclude that the prospective class meets the element of commonality, and the failure of the district court to find commonality constitutes an abuse of discretion. In doing so, however, we accept the allegations of the Tenants as true. We note that the district court holds discretion to decertify the class if at any time it determines that the plaintiff class and its representatives no longer meet the elements of a class as defined under NRCP 23.
 
 See Blackie,
 
 524 F.2d at 891. With this caveat, we direct the clerk of this court forthwith to issue a writ of mandamus compelling the district court to certify a plaintiff class.
 
 [2]
 

 [1]
 

 Bigelow also argues that the Tenants’ attorney engaged in prohibited ex parte contact with the judge’s law clerk to obtain the order denying reconsideration of the issue of certification on the basis of a lack of commonality. EDCR 7.74 provides that “[n]o attorney may argue to or attempt to influence a law clerk on the merits of a contested matter pending before the judge or judicial officer to whom that law clerk is assigned.” Nothing in the record suggests that the Tenants’ counsel argued or attempted to influence the law clerk.
 

 [2]
 

 The Honorable Miriam Shearing, Justice, did not participate in the decision of this appeal.